OPINION OF THE COURT
Christine A. Sproat, J.
Petitioner William E. Sherwood moves for an order pursuant to the US Constitution and articles 7 and 16 of the Election Law:
1. Ordering the respondent New York State Board of Elections to certify the name of the petitioner to appear in a voting position on row F of the voting machines, or such other row which may be allocated to the candidates of the Right to Life Party, an independent body, in the 2007 general election; and
2. Enjoining, restraining, and prohibiting the respondent Boards of Elections from distributing official ballots to be used at the 2007 general election for the public office of Justice of the Supreme Court, Ninth Judicial District, without petitioner’s name listed in the row allocated to the candidates of the Right to Life Party; and
3. Ordering respondent Boards of Elections to print and distribute ballots only with the petitioner’s name listed in the row allocated to the candidates of the Right to Life Party (row F); and
4. Declaring the statute, Election Law § 7-104, unconstitutional on its face and/or unconstitutional as applied to the petitioner.
Petitioner William E. Sherwood’s application is granted and it is hereby ordered that:
1. The respondent New York State Board of Elections is directed to certify the name of the petitioner to appear in a voting position on row F of the voting machines, or such other row which may be allocated to the candidates of the Right to Life Party, an independent body, in the 2007 general election; and
2. The respondent Boards of Elections are enjoined, restrained, and prohibited from distributing official ballots to be used at the 2007 general election for the public office of Justice of the Supreme Court, Ninth Judicial District, without petitioner’s name listed in the row allocated to the candidates of the Right to Life Party; and
*924 3. Respondent Boards of Elections are directed to print and distribute ballots only with the petitioner’s name listed in the row allocated to the candidates of the Right to Life Party (row F); and
4. The statute, Election Law § 7-104, is declared unconstitutional as applied to the petitioner.
All other requested relief is denied.
In the instant election proceeding, petitioner William E. Sherwood is a candidate for reelection to the public office of Justice of the Supreme Court, Ninth Judicial District. Petitioner is a nominee of the independent body known as the Right to Life Party. However, respondent New York State Board of Elections did not provide petitioner “a separate, fourth voting position on the ballot on Row F, which is associated with the Independent Body, the Right to Life Party.” (First amended verified petition para 15; see also New York State Board of Elections’ verified answer to first amended petition para 1.) Petitioner alleges that “respondent Board is forcing the emblem for this Independent Body to be placed on the Conservative party line (Row D) and leaving the ballot position for the Right to Life Party in column 3 on the ballot (where the name of [the] petitioner appears) blank.” (First amended verified petition para 16.)
The ballot layout being imposed by respondents upon the petitioner is reflected in exhibit A annexed to the first amended verified petition. (First amended verified petition para 19; respondent New York State Board of Elections’ verified answer to first amended petition para 1.) The ballot layout sought by petitioner is set forth in exhibit B annexed to the first amended verified petition. Petitioner alleges, and the court finds, that a side-by-side comparison of the two ballot layouts shows: (1) that the only candidate being affected is the petitioner, and (2) that respondents’ ballot layout makes it appear that the petitioner is running against the candidates of the Right to Life Party rather than with them.
The respondents argue that Election Law § 7-104 requires petitioner to be excluded from row F of the ballot, the Right to Life line. However, the petitioner does not dispute that the respondents are literally following Election Law § 7-104. Rather, petitioner asserts, inter alia, that
“the rule being applied by the respondent Boards of Elections interferes with petitioner’s right to free speech and free association, as it impairs his ability to be associated with the Right to Life Candidates *925 and to be identified, as clearly as possible as a candidate of the Right to Life Party. This application of the law is unconstitutional ... as applied, because it interferes with the Right to Life voters’ [right] to easily and intelligently cast their vote for petitioner, and exercise their right of Free Association and Free Speech to align themselves with petitioner and support his candidacy. Also, there is no rational basis for a rule (applied to petitioner here) that allows candidates for some offices (Assembly, Senate, Governor) to be accorded the right to unlimited ballot lines but denies that right to all other candidates.” (First amended verified petition paras 39-41.)
The Court agrees.
“Under the circumstances of this case, to exclude [petitioner] candidate[ ] from the independent [Right to Life] line is discriminatory and unconstitutional, both as to the candidate [ ] and as to the voters allied with the independent movement which wishes to support the candidates only on the independent [Right to Life] line. (Matter of Crane v Voorhis, 257 NY 298). Since a separate line is reserved on the ballot for those candidates nominated for [Supreme Court Justice] by this independent movement, it will be unfair to the candidate[ ], [his Right to Life] running mates and the [voters] to have a blank space where the name of [the petitioner] nominee[ ] would otherwise appear.” (Matter of Smith v McNab, 35 AD2d 744, 745 [2d Dept 1970, Benjamin, J., dissenting].)
The possibility of this exact scenario was recently addressed by the United States District Court, Eastern District of New York.
In Dillon v New York State Bd. of Elections (2005 WL 2847465, *7, 2005 US Dist LEXIS 25853, *20-21 [ED NY, Oct. 31, 2005]), the U.S. District Court stated that,
“Section 7-104.5 (c) [of the Election Law] could produce some anomalous results. For example, if the [independent body] had . . . obtained a separate ballot line, the law would (according to the defendant Boards of Elections) require that the box in the [public office] column be blank. That is, the [independent body’s] name and emblem would appear on [a party’s] line for [the public office] even if the [;independent body] had its own line. [The Court] *926 need not address that remorseless reading of the statute, and the absurd result it would produce, as the [independent body] had not otherwise earned its own line on [the] ballot.” (Additional emphasis added.)
The court agrees with the U.S. District Court’s characterization of respondents’ reading of the statute. In the instant matter, where the independent body’s line already exists, the leaving of a blank box in the column of petitioner would be nonsensical. Accordingly, as this court cannot condone a “remorseless reading of the statute, and the absurd result it would produce,” the petitioner’s application must be granted. (.Dillon v New York State Bd. of Elections, 2005 WL 2847465, *7, 2005 US Dist LEXIS 25853, *21 [2005].)